S. T. CARSON v. THE NATIONAL LIFE INSURANCE COMPANY
AND GEORGE BRILEY.

(Filed 5 March, 1913.)

1. Contracts — Assignments—Signing as Obligor—Intent—Interpretation.

One signing a unilateral written contract relating to personalty,
at the place usual for obligors thereon, will as a general rule
be bound by its terms, though his name does not appear in the
body of the instrument, the test being whether from a perusal
of the entire instrument, without the aid of extrinsic evidence,
his intent to execute and to be bound by it plainly appears.

2. Same—Bilateral—Independent Stipulations.

The principle which obtains to bind one who has signed a
written instrument as an obligor thereon, though his name may
not appear in the body of the instrument, is, to a great extent,
but not universally, confined to contracts relating to personalty
which create a present obligation, and are, on their face, unilateral in operation, and not where the written instrument contains mutual or interdependent stipulations by reason of which,
without the aid of extrinsic evidence, it cannot be determined
whether a third person who joins in subscribing to the paper
intended to come under obligation to one or the other of the subscribing parties.

3. Contracts — Interpretation — Assignments—Signing as Obligor—
Realty—Married Women.

The general rule which binds one appearing upon a unilateral
written instrument appearing to have signed it as an obligor
thereon, does not obtain in instruments conveying or assigning
rights and interests in realty, more particularly when rights of
married women are claimed or assailed under deeds purporting
to have been made by a husband in which his wife's name only
appears with his as subscriber to the instrument.

4. Contracts—Partly Written—Assignments—Parol Evidence—Collateral—Burden of Proof—Degree of Proof—Preponderance of
the Evidence.

In written assignments of ordinary mercantile or business contracts it is competent for the parties to prove by parol, and as a
part of the agreement, but not reduced to writing, that the instrument should be held as collateral to secure a debt; and where
a policy of life insurance has been assigned in writing it is only
necessary to show, by the preponderance of the evidence, and

not by clear, strong, and convincing testimony, that as a part of the agreement, resting in parol, the policy was not to be held as an absolute assignment, but only as collateral security for moneys advanced by the assignee thereon. In this case a statement appearing at the top of the written contract of assignment, describing it as "an absolute assignment, etc.," does not affect the principles applied.

APPEAL from *Cline, J.*, at September Term, 1912, of PITT.

Civil action to recover on a life insurance policy. The policy, in the sum of $1,000, was issued by the company on the life of one David A. Briley for the benefit of his son George. David having died, the suit was instituted by plaintiff, claiming to be the owner under an absolute assignment from both David A., the assured, and George, the beneficiary, evidenced by written contract in terms as follows:

ABSOLUTE ASSIGNMENT, WITH POWER OF ATTORNEY.

*(Duplicate.)*

In consideration of the sum of $1 and of other valuable considerations to me in hand paid, the receipt whereof is hereby acknowledged, I, David A. Briley of Bethel Township, in the county of Pitt and State of North Carolina, issued 24th day of March, 1906, by the National Life Insurance Company of Montpelier, Vermont, for the sum of $1,000 and No. 180121, do hereby assign, transfer, and set over unto S. T. Carson of Bethel, N. C., in the county of Pitt and State of North Carolina, the said policy or contract of insurance, with all its benefits, subject to its conditions and to the rules and regulations of the said National Life Insurance Company, to have and to hold the same unto the said assignee, his executors or administrators forever.

And I do hereby authorize and empower the said S. T. Carson, his executors or administrators, to surrender said policy or contract of insurance at any time at or before its maturity, for its cash value, as the same may be determined by the said National Life Insurance Company at the time of said surrender, and to give to said company a valid and sufficient receipt therefor in the form required by said company, which receipt I hereby promise and agree shall be binding upon me, my

heirs, executors, or administrators; and more fully to accomplish and effectuate the purpose of this assignment, I do hereby make, constitute, and appoint the said S. T. Carson, his administrators or executors, my attorney irrevocable, to take all proceedings in my name and stead, but to his use to ask, demand, levy, require, and receive of and from the said National Life Insurance Company, or others, all and singular, the sum and sums of money which shall and may be found due and payable, belonging and coming unto me by any means whatsoever for, by, or on account of the above named policy or contract of insurance, whether by death or by act of the insured, or maturity under its terms, without the payment to me of any further consideration.

And for the consideration above expressed, I hereby, for myself, my heirs, executors, or administrators, do covenant and guarantee to the aforesaid assignee, his executors or administrators, that the aforesaid policy or contract of insurance, No. 180121, belongs to me and is free and clear from all liens and encumbrances; that I have made no other transfer or assignment of nor power of attorney to collect upon the same which is now in force; that it is not affected by any proceedings in bankruptcy or insolvency instituted by or against me since its issue; that I have good right, full power, and lawful authority to assign the same in manner and form aforesaid; that I will at any time hereafter, at the cost of the said assignee, his executors or administrators, make, do, execute, or procure to be made, done, or executed, such reasonable assurances, acts, and instruments for the more effectual confirmation of this assignment as may be requested by him or them, and that the said assignee has, by the value paid by the said assignor, an insurable interest in the life insured, as represented by said policy or contract of insurance to an amount equal to its greatest value under any circumstances.

In witness whereof I have hereunto, and to duplicate hereof, set my hand and seal, this 9th day of October, A. D. 1907.

His<br>DAVID ✕ A. BRILEY [L. S.].<br>mark

His<br>GEORGE ✕ BRILEY.<br>mark.

CARSON v. INSURANCE CO.

STATE OF NORTH CAROLINA, COUNTY OF PITT—ss.

Be it known, that on the 19th day of October, A. D. 1907, before me, a notary public in and for said county in the State aforesaid, duly commissioned and sworn, personally came and appeared David Briley and George Briley, of legal age, to me personally known, and known to me to be the same persons described in and who executed the foregoing instrument, and to me acknowledged the same to be their free act and deed.

In testimony whereof I have hereunto subscribed my name and affixed my seal of office, the day and year last above written.

W. H. WOOLARD,
*Notary Public.*

My commission expires October 26, 1907.

Suit having been instituted against the company, it paid the amount due on the policy into court, accompanied by the statement that it had been notified by George Briley, the son and beneficiary, that he was the owner, and suggesting that said George be made a party. This having been done, George Briley answered, denying that he had knowingly signed the contract, alleged that the signatures had been procured by fraud, and further, in effect, that the policy had been by him turned over to plaintiff and the written contract signed by him under a further agreement and understanding that the policy and its proceeds should be held by plaintiff as collateral for certain amounts which plaintiff had advanced and might be required to advance in keeping the policy alive by payment of premiums; and so demanded judgment that after allowing plaintiff for all sums advanced by him and 6 per cent interest, that the remainder of the money be paid to defendant.

The court charged the jury properly on the issues as to fraud in the execution of the contract, and being of opinion that the instrument, if executed by George Briley, amounted to absolute assignment of the policy, and the same being in writing, defendant could only claim an interest in the policy or its proceeds by establishing his alleged agreement by clear, strong, and convincing testimony, etc.; the position being expressed in the charge as follows: "Therefore, where one alleges that a will

or deed, or an assignment of an instrument absolute upon its face was in fact intended for a different purpose, then the person alleging this condition or trust which he seeks to attach to the paper must satisfy the jury, by evidence that is clear, strong, cogent, and convincing, that the alleged agreement between the parties, which does not appear upon the face of the paper, was in fact a part of the agreement between them at the time, and that this intent should be included in the paper-writing." Defendant excepted. Verdict on the issues for plaintiff. Judgment, and defendant again excepted and appealed.

*Julius Brown and S. J. Everett for plaintiff.*
*Harry Skinner and Albion Dunn for defendant.*

HOKE, J., after stating the case: As a general rule, one who subscribes his name to a written contract at the place usual for obligors in such a paper is bound by its terms as a written agreement, though his name may not so appear in the body of the instrument (9 Cyc., p. 301), the test being, whether on perusal of the entire instrument and without the aid of extrinsic evidence it plainly appears that such signer intended to execute it and be bound by its terms. *Clark v. Rawson,* 2 N. Y., 135 (Denio, vol. 2); *Perkins v. Goodman,* 21 (Bar.) N. Y., 218; *Ex parte Fulton,* 7 Cowen (N. Y.), 484; *Thompson v. Coffman,* 15 Oregon, 631; *Staples v. Wheeler,* 38 Me., 372; *Danker v. Atwood,* 119 Mass., 146; Amer. Digest (Cent. Ed.), Contracts, sec. 773.

By reason of the test suggested, the principle will to a great extent, but not universally, be confined in its application to contracts which create a present obligation and are on their face unilateral in operation, as in the case of a promissory note, and is not permissible where the written instrument contains mutual or dependent stipulations, so that without the aid of extrinsic evidence it cannot be determined whether a third person who joins in subscribing to the paper intended to come under obligation to one or the other of the contracting parties. An instance of this occurring in *Blackwell v. Davis,* 128 Mass., 538. It is also held with us, and by the weight of authority elsewhere, that the general rule does not obtain in instruments

conveying or assigning rights and interests in realty, more particularly when the rights of married women are claimed or assailed under deeds purporting to be made by the husband and in which the wife's name only appears with him as subscriber to the instrument. In such case the decisions are that to bind the wife or convey or affect her interests there must be apt and operative words of assignment by her in the body of the deed. See *King v. Rhew,* 108 N. C., 696; *Harrison v. Simans,* 55 Ala., 516; *Bruce v. Wood,* 42 Mass., 542; *Lancaster v. Roberts,* 144 Ill., 213.

In the case before us, while the contract purports to assign an existent interest, in the absence of some contrary stipulation in the policy of insurance, the right to make such assignment rests with the beneficiary, George Briley (Bliss on Life Insurance, 2 Ed., sec. 337), and on a perusal of the entire instrument it plainly appears that it was his intent to transfer the policy to the assignee. He could have had no other reasonable purpose, and under the general principle first stated the judge correctly ruled that the paper-writing was the written contract of said beneficiary and amounted in form to an absolute assignment of the same.

While we uphold his Honor's decision in the respect suggested, we are of opinion that he erred in charging the jury that the defendant was required to establish his position on the second issue "by clear and convincing evidence," such position being that the policy, though taken under an assignment absolute in form, was in fact held as collateral. This wholesome rule as to the degree of proof has been frequently held to apply in this State, and in proper case obtains both as to real and personal contracts (*Salinger v. Perry,* 130 N. C., 134); but in the case before us, and others of like import, it only prevails where it is sought to alter or reform a written instrument or annex a trust thereto because it is necessary to do so in order to assert the right claimed or to avoid a material contradiction of a written contract or the portion of it which the parties have reduced to writing. Thus, when it is alleged that a deed conveying realty, absolute in form, was intended as a mortgage, contracts concerning realty are required to be in writing, and

in order to carry out the contract as claimed, it is necessary to reform a solemn written instrument, and the principle referred to applies; and where, as in the case of *Salinger v. Perry, supra,* the position contended for involves a direct contradiction of the written contract, this too necessitates a change in the written instrument, and must be established by the same degree of proof. The recent cases of *Fertilizer Co. v. McLawhorn,* 158 N. C., 274; *Walker v. Venters,* 147 N. C., 388; *White v. Carroll,* 147 N. C., 330, are instances of this character; but in these assignments of ordinary mercantile or business contracts it is very generally held that it is competent for the parties to prove by parol that as a part of the agreement the instrument should be held as collateral to secure a debt. Such a position does not necessarily require or involve a change in the writing, but recognizing the contract as written and as necessary to pass the title, it only superadds the additional stipulation indicated which the parties have made by parol. It presents a case where part of the contract only is in writing, and the additional feature having been made by parol and being valid when so made, can be shown and established by a preponderance of the proof. The principle was discussed in two cases at the present term, *Pierce v. Cobb, ante,* 300, and *Lytton v. Lumber Co.,* and is illustrated in several recent decisions of the Court. (*Typewriter Co. v. Hardware Co.,* 143 N. C., 97; *Evans v. Freeman,* 142 N. C., 61), and, as stated, is very generally applied in assignments of these ordinary mercantile contracts taken as collateral to secure indebtedness, including insurance policies, certificates of stock, etc. *Kendal v. Insurance Co.,* 171 Mass., 568; *Riley v. Bank,* 164 Mass., 482; *Westbury v. Summers,* 57 S. C., 467; *Chamberlain v. Butler,* 61 Neb., 730, reported 87 Am. St. Rep. and principle referred to in editorial note at p. 511; *Brick v. Brick,* 98 U. S., 514.

We are not inadvertent to the statement in the record, at the top of the written contract, purporting to describe the same as "an absolute assignment and power of attorney." It was not shown that such a heading was or was not intended to be a constituent part of the contract, and for aught that appears it may be only an estimate of plaintiff as to its contents, and cer-

tainly on the facts presented it should not be allowed substantial effect in the interpretation. *Milhusen v. Eardman,* 103 N. C., 27; *Summers v. Hibbard,* 153 Ill., 102; 2 Page on Contracts, sec. 600.

For the error indicated defendant is entitled to a new trial of the cause, and it is so ordered.

New trial.