(98 App. Div. 197)

### ESSELSTYN v. McDONALD et al.

(Supreme Court, Appellate Division, Second Department. November 18, 1904.)

1. SHIPPING—DREDGES—CHARTERS—PARTIES.

　　Where defendant affixed his signature to a charter party providing for the leasing of a dredge to a corporation of which defendant was president, and delivered the instrument to the owner of the dredge, defendant thereby made himself a party, and became bound as a lessee, though the charter party did not recite his name therein.

2. SAME—WRITTEN INSTRUMENTS—PAROL EVIDENCE.

　　Where a charter party by which a dredge was leased to a corporation contained no reference to the fact that the president of the corporation, who signed his individual name thereto, was a party, parol evidence that the lessor declined to enter into the proposed contract until it was so signed was admissible to explain the ambiguity in the lease.

3. COSTS—EXTRA ALLOWANCE.

　　Where, on breach of a charter party for the hiring of a dredge, the lessee not only failed to pay the stipulated rent, but permitted the dredge to be taken in custody by the United States marshal under a libel for liens, which plaintiff was compelled to pay, it was proper for the court to make an extra allowance of costs.

Appeal from Trial Term, Richmond County.

Action by Willard A. Esselstyn against James P. McDonald, impleaded with the McDonald Dredging Company. From a judgment in favor of plaintiff, and from an order denying James P. McDonald's motion for a new trial, he appeals. Affirmed.

The action was based on a written contract of charter or lease of a dredge called the "Rittenhouse Moore" for use in the harbor of Portland, Me. The charter party read as follows:

"Agreement, made this second day of November, 1898, between Rittenhouse Moore, of Mobile, in the State of Alabama, hereinafter called the lessor, party of the first part; and The McDonald Dredging Company, a Corporation of the State of West Virginia hereinafter called the lessee, party of the second part, witnesseth:

"Whereas, The lessor is the sole owner of a 'Clam Shell' dredge, known as the 'Rittenhouse Moore,' now in the harbor of Portland, in the State of Maine; and

"Whereas, the lessee is desirous of leasing the same upon the terms hereinafter expressed,

"Now, Therefore, in consideration of the premises and of other good and valuable considerations, the receipt whereof is acknowledged, the parties hereto have agreed and do hereby agree as follows:

"First. The lessor agrees to lease to the lessee the said dredge and its appurtenances for the term of four (4) months, at the rental of Three Thousand dollars per month, payable on the first day of each month, the said term to commence on the first day of November, 1898, and to terminate on the first day of March, 1899, at 12 o'clock noon as hereinafter provided. The lessor agrees that, at all times during the said lease the lessee shall have quiet and undisturbed possession of the said dredge and its appurtenances, and that the lessee may use and work the same, day and night, in the harbor of Portland, Maine, as the lessee may deem necessary and expedient.

"Second. The lessee agrees to lease the said dredge on the terms above expressed, and agrees to pay to the lessor a rental of Three thousand dollars per month during each month of the said term, payable on the first day of November and December, 1898, and January and February, 1899. The lessee further agrees upon the expiration of the said term to return the said dredge and its appurtenances to the lessor in the harbor of Portland, Maine, as aforesaid, in as good a condition as the same now is, ordinary wear and tear excepted. The lessee further agrees to insure said dredge while in the possession of the lessee against marine loss in the sum of Twenty-five thousand dollars ($25,-000), payable in the event of loss to the lessor.

"Third. Either party hereto may terminate this lease at any time after the four months of fixed charter upon thirty (30) days' notice in writing to the other; such notice in case of lessor to be by mail, addressed to the lessor, at Mobile, Alabama, and in the case of the lessee, to be by mail addressed to the lessee, at its office, No. 33 Wall street, New York City.

"In Witness Whereof, the lessor has hereunto set his hand and seal, and the lessee has caused its corporate seal to be hereunto affixed and these presents to be signed and attested by its secretary, and year first above written [sic].

"R. Moore.
"McDonald Dredging Company,
"By Jas. P. McDonald, Pres.
"James P. McDonald."

Willard A. Esselstyn, the plaintiff respondent, is the assignee of the claim of Rittenhouse Moore against the defendants for the alleged breach of the above contract. The McDonald Dredging Company, one of the defendants, served an answer to the complaint, but on the trial of the action made no defense. James P. McDonald, the other defendant, who was the president of the dredging company, denied liability under the contract and otherwise entirely, and the question of his liability was the sole question tried. He is the only appellant.

The amount of recovery demanded in the complaint was $8,400, together with interest from April 30, 1899. This amount included the sum of $3,800 alleged to have been paid by Rittenhouse Moore as "bills and liens against said dredge," and it was alleged that it was necessary to pay this amount in order to free the dredge from the custody of the United States marshal; the dredge having been libeled in the United States court for that amount. At the trial the jury returned a verdict for the sum of $9,895, of which $2,093 was interest; $800 was, under the direction of the court, for bills and liens paid on account of the alleged libel by Rittenhouse Moore. An extra allowance of 5 per cent. of the verdict, amounting to $494.65, was also granted by the court. The total of the judgment was $10,475.08. The appellant, James

P. McDonald, denied that he was legally a party to the written contract, or that, as a matter of fact, he ever entered into it, or that he ever entered into any agreement of renewal of the charter on March 1, 1899, which it was alleged terminated on May 1, 1899, or authorized any one to enter into such an agreement, or that he was in any way responsible for the dredge, or the liens against it.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

J. Tredwell Richards (William F. McCombs, Jr., with him on the brief), for appellant.

George Whitefield Betts, Jr., for respondent.

WILLARD BARTLETT, J. Although the written instrument by which the dredge was leased or chartered did not recite the name of James P. McDonald as a party, I think that, upon affixing his signature and delivering the paper to the owner of the vessel, he made himself a party, and became bound as one of the lessees thereunder. Thomas v. Gumaer, 7 Wend. 43; Parks v. Brinkerhoff, 2 Hill, 663; Clark v. Rawson, 2 Denio, 135; Perkins v. Goodman, 21 Barb. 218; Ex parte Fulton, 7 Cow. 484. In these and similar cases the courts have held liable, as parties to a contract, persons who subscribed their names thereto, but were not mentioned in the body of the document. This is considered to be an application of the rule which requires effect to be given to all parts of a written instrument, where that is possible. Blackmer v. Davis, 128 Mass. 538, 541. The principle governing the Massachusetts decisions of like purport is stated to be "that one who signs and delivers a written instrument containing a distinct promise to the party to whom it is delivered must be presumed to have intended to bind himself to the performance of the promise." It has usually been applied in cases where the contract contains promises only in favor of the party to whom it is delivered, but there is no good reason why it should not be equally applicable to a contract containing mutual stipulations between the parties named in the body of the agreement, where the doubt or ambiguity on the face of the instrument, as to the capacity in which the third signer intended to bind himself, may be resolved by the aid of explanatory parol evidence. Such evidence was received in Ahrend v. Odiorne, 125 Mass. 50, 28 Am. Rep. 199, and was properly admitted, I think, in the present case, to show whether James P. McDonald signed as a lessee or a lessor of the dredge—a matter as to which no inference could be drawn one way or the other from the language of the contract itself. "While it is the province of the court to construe contracts, yet, where the meaning is obscure, and depends upon facts aliunde in connection with the written language, very much must be left to the jury." First Nat. Bank v. Dana, 79 N. Y. 108, and cases cited. This oral testimony authorized the jury to find, as their verdict shows they must have found, that the lessor, Rittenhouse Moore, told James P. McDonald, in substance, that he would not enter into the proposed contract unless it was signed by him as lessee, and that upon such refusal James P. McDonald affixed his signature, in addition to that of the McDonald Dredging Company. In this view, the appellant was properly held liable as one of the principal parties to whom the dredge was chartered or leased.

The proof supports the further finding of the jury that the dredge was in the possession of the defendants during the whole period alleged in the complaint. It also sufficiently established the plaintiff's claim to recover the amount paid out to release the vessel from liens incurred while she was under the defendants' control.

As to the question of the extra allowance, the case seems fairly to fall within the class in which additional costs may properly be granted. The judgment should be affirmed.

Judgment and order affirmed, with costs. All concur.